UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **JOHN P. WHALEN, IV,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 4:22-CV-00431-NCC |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of John P. Whalen, IV ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 24) and Defendant has filed a brief in support of the Commissioner's decision (Doc. 26). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on November 12, 2019 (Tr. 100). Plaintiff was initially denied on April 9, 2020, and upon reconsideration on August 12, 2020 (Tr. 137-142, 144-49). He filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 150-51). After a hearing, by decision dated February 18, 2021, the ALJ found Plaintiff not disabled (Tr. 7-24). On March 14, 2022, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023, and that Plaintiff has not engaged in substantial gainful activity since January 3, 2020, the alleged onset date (Tr. 12).  The ALJ found Plaintiff has the severe impairments of rheumatoid arthritis, fibromyalgia, depression, anxiety and a personality disorder, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except: the claimant is limited to simple and/or repetitive work with only occasional changes in work settings and routines; the claimant is able to maintain concentration, persistence and pace while performing simple and/or repetitive work with only occasional changes in work settings and routines; the claimant should avoid jobs requiring close interaction with the public and coworkers; interaction with supervisors is limited to that necessary to perform simple and/or repetitive work with only occasional changes in work settings and routines; occasional brief superficial contact with the public, coworkers and supervisors is able to be tolerated; the claimant should avoid climbing ladders, ropes and scaffolds; and the claimant is limited to occasional crawling and kneeling and is limited to reaching overhead with the left upper extremity only occasionally (Tr. 14).  The ALJ found that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including sandwich board carrier, ironer, and classifier (Tr. 17-18).  Thus, the ALJ concluded that Plaintiff has not been under a disability from January 3, 2020, through the date of the decision (Tr. 18).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731,

736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues that the ALJ failed to properly evaluate the RFC (Doc. 24 at 3). Second, Plaintiff argues that the ALJ failed to properly evaluate credibility (*id.*). The Court addresses each argument as follows and ultimately finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

### A.  RFC

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC need only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

Plaintiff argues that the ALJ failed to properly evaluate the RFC (Doc. 24 at 3). Specifically, Plaintiff argues that the ALJ failed to adequately explain why he failed to evaluate

5

whether Plaintiff needs a cane to ambulate and that, if Plaintiff needs a cane to ambulate, he cannot perform light work and should be limited to sedentary work (*id.* at 4-5).  The Court disagrees.

Plaintiff was issued a cane in May of 2019 when his rheumatoid arthritis was partially controlled (Tr. 561, 567).  As noted by the ALJ, an October 28, 2019[1] rheumatology follow-up reflects that Plaintiff's mobility was improved and he was walking without a cane (Tr. 15, 673).  Plaintiff's physical exam during a January 3, 2020 pain management follow-up reflects that he was walking without an assistive device and that his walk was stable and steady (Tr. 1161).  A February 20, 2020 psychiatry follow-up reflects that Plaintiff tried to go somewhere most days by walking around Best Buy, Walmart, or Costco (Tr. 1297), and an August 17, 2020 psychiatry follow-up reflects that Plaintiff was going for walks for activity and that he was not going to the gym due to COVID safety concerns (Tr. 1495-96).  As partially noted by the ALJ, Plaintiff's rheumatoid arthritis was well controlled as of January 27, 2020, April 29, 2020, and September 22, 2020 (Tr. 16-17, 1255, 1259, 1308, 1517, 1521).  *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) (if an impairment can be controlled by treatment or medication, it cannot be considered disabling); *Mabry v. Colvin*, 815 F.3d 386, 391-92 (8th Cir. 2016) (same).  Finally, as noted and found persuasive by the ALJ, state agency physicians evaluated Plaintiff on April 9, 2020 and August 11, 2020 and opined that Plaintiff was capable of light work with limitations related to climbing, crawling, and reaching overhead with his left upper extremity (Tr. 16, 108-10, 126-29).  The ALJ did not err in failing to properly evaluate Plaintiff's need for a cane to

---

[1] As noted by the Commissioner, the ALJ erroneously identifies the visit as occurring on April 22, 2019, which is actually *farther* in time from the alleged onset date of January 3, 2020.

ambulate nor did the ALJ err in failing to include a corresponding limitation to sedentary work in the RFC.

Plaintiff further argues that the ALJ failed to properly evaluate evidence of Plaintiff's left shoulder impairment (Doc. 24 at 5-7).  Again, the Court disagrees.  After injections failed to provide relief and an MRI showed a partial rotator cuff tear, Plaintiff underwent surgery on his left shoulder on March 3, 2020 (Tr. 1164-65, 1192, 1203-04).  His post-operative diagnosis was impingement syndrome partial rotator cuff tear of the left shoulder and a slap tear/partial biceps tear (Tr. 1203).  The partial rotator cuff tear was superficial, consisting of less than 10% of the thickness of the tendon (Tr. 1188, 1204).  The procedure consisted of a left shoulder arthroscopy with subacromial decompression and open biceps tenodesis (Tr. 1203).

While Plaintiff's left shoulder and arm were very painful in the wake of his surgery (Tr. 1269, 1272-75), his impairment improved significantly with physical therapy.  As noted by the ALJ, Plaintiff had an initial evaluation for physical therapy on April 27, 2020 (Tr. 16, 1327).  As of an April 29, 2020 rheumatology follow-up, Plaintiff reported that he had started physical therapy and his pain was improving, and Plaintiff's main complaint was a lack of motivation (Tr. 1255).  Plaintiff attended eight physical therapy sessions (Tr. 1328).  By his final session on June 1, 2020, he had largely accomplished his goals (Tr. 1328).  Despite some lingering biceps pain, he reported overall improvement and no longer having issues with his self-care or activities of daily living (Tr. 1328).  He was assessed as having improved range of motion and strength, improved scapulohumeral mechanics, and only mild weakness in his shoulder that was progressing with weights and repetitions (Tr. 1328).[2]  *See Hensley*, 829 F.3d at 933 (if an

---

[2] The following chart is a good illustration of Plaintiff's progress:

impairment can be controlled by treatment or medication, it cannot be considered disabling); *Mabry*, 815 F.3d at 391-92 (same).  As noted and found persuasive by the ALJ, state agency physicians evaluated Plaintiff on April 9, 2020 and August 11, 2020 and opined that Plaintiff was capable of light work with limitations related to climbing, crawling, and reaching overhead with his left upper extremity due to his left rotator cuff repair and open biceps tenodesis (Tr. 16, 108-10, 126-29).  In the RFC, the ALJ included limitations to perform only light work; that the claimant should avoid climbing ladders, ropes and scaffolds; and that the claimant is limited to occasional crawling and kneeling and is limited to reaching overhead with the left upper extremity only occasionally (Tr. 14).  The ALJ did not err in failing to properly evaluate evidence of Plaintiff's left shoulder impairment.

      Finally, Plaintiff argues that the ALJ erred in failing to mention or evaluate evidence after May 7, 2020 of Plaintiff's mental limitations, including rheumatology records regarding his fibromyalgia, records from his psychologist, and records regarding Integrative Medicine for his fibromyalgia and depression (Doc. 24 at 7-8).  The Court disagrees.  Finding the April 7, 2020 and August 5, 2020 opinions of state agency psychologists very persuasive, the ALJ included the following mental limitations in the RFC: the claimant is limited to simple and/or repetitive work with only occasional changes in work settings and routines; the claimant is able to maintain

---

| Shoulder | A/PROM | | | | Shoulder | MMT | | |
|---|---|---|---|---|---|---|---|---|
| Date | 4/27/20 | | 6/1/20 | | Date | 4/27/20 | | 6/1/20 |
| | Right | Left | Left | | | Right | Left | Left |
| Flexion: | 160/175 | 135*/150 | 163/165* | | Flexion: | 5/5 | 3-/5 | 4/5* |
| Abduction: | 155/180 | 110*/170 | 175/180 | | Abduction: | 5/5 | 3-/5 | 4/5 |
| Ext Rotation | 95/100 | 75/80 | 95/100 | | Ext Rotation | 5/5 | 3+/5* | 4+/5 |
| Int Rotation: | T7/65 | T12/50 | T8/70 | | Int Rotation: | 5/5 | 3+/5* | 4+/5* |

*denotes pain

(Tr. 1328).

8

concentration, persistence and pace while performing simple and/or repetitive work with only occasional changes in work settings and routines; the claimant should avoid jobs requiring close interaction with the public and coworkers; interaction with supervisors is limited to that necessary to perform simple and/or repetitive work with only occasional changes in work settings and routines; and occasional brief superficial contact with the public, coworkers and supervisors is able to be tolerated (Tr. 14, 16).  Plaintiff fails to identify any additional limitation that should have been included based on the evidence Plaintiff cited.  *See* Doc. 24 at 7-8.

Plaintiff cites *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) for the proposition that "[t]he ALJ's failure to include a vast majority of the evidence of record in the hearing decision is not just a deficiency in opinion, it is an inaccurate and incomplete analysis of the evidence which should serve as a basis for remand" (Doc. 24 at 8).  *Draper* is inapposite.  The actual proposition from that case states "[w]hile a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand."  *Draper*, 425 F.3d at 1130 (quoting *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000)).  Moreover, *Draper* involved the ALJ's inconsistent findings that the plaintiff could not perform past relevant work as a cashier, classified as light work, but had the RFC to perform light work, and the ALJ's failure to call a vocational expert.  *Draper*, 425 F.3d at 1129-32.  Here, any deficiency in failing to explicitly evaluate the evidence cited by Plaintiff had no practical effect on the outcome of this case.  The Court notes that Plaintiff's psychiatry records reflect that, although Plaintiff reported his mood as "pretty rough" as of August 17, 2020 related to a COVID infection spike (Tr. 1495-96), he was "pretty good" and "pretty solid" and having a good response to his medications as of June 24, 2020 (Tr. 1422, 1425), and he was

9

"very positive," "very happy," "in a good place," and "on solid footing" as of November 4, 2020 (Tr. 1493, 1497).  Moreover, as of November 4, 2020, his memory issues had improved significantly after he stopped taking atorvastatin and his anxiety and daytime fatigue had gotten better after decreasing his venlafaxine (Tr. 1497-98).  The Court finds that the ALJ did not err in failing to properly evaluate the RFC.

### B.  Credibility

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility (Doc. 24 at 3, 9).[3]  Plaintiff contends that the ALJ did not make an express credibility determination as required by Eighth Circuit law and that the ALJ's credibility assessment is not supported by substantial evidence (*id.* at 9-10).  The Court disagrees.

The ALJ considered Plaintiff's testimony regarding his symptoms (Tr. 14-15).  The ALJ noted that an October 28, 2019 rheumatology follow-up reflects that Plaintiff's mobility was improved and he was walking without a cane (Tr. 15).  The ALJ noted that Plaintiff's rheumatologist stated his rheumatoid arthritis was well controlled except when Plaintiff was off his medications for a month due to his left shoulder surgery (Tr. 16-17).  The ALJ noted that Plaintiff had a physical therapy evaluation for his left shoulder on April 27, 2020 and reported doing light lifting of can goods for shoulder exercise and light activities around the house, including mowing the grass, sweeping, and vacuuming (Tr. 16).  The ALJ noted and found persuasive the opinions of state agency physicians that Plaintiff was capable of light work with limitations related to climbing, crawling, and reaching overhead with his left upper extremity (Tr. 16).  The ALJ then concluded that "the claimant's statements concerning the intensity,

---

[3] Plaintiff notes that a new ruling eliminates the use of the term "credibility" but that the factors to be considered in evaluating a claimant's statements remain the same (Doc. 24 at 9 n.5). Plaintiff uses the word "credibility" for purposes of clarity (*id.*).  The Court will do the same.

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision" (Tr. 17). *See Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (the ALJ's determinations of credibility are ordinarily due deference by the courts); *Swink v. Saul*, 931 F.3d 765, 771 (8th Cir. 2019) (an ALJ may decline to credit a plaintiff's subjective complaints if the evidence as a whole is inconsistent with a plaintiff's testimony).

Plaintiff argues that the ALJ failed to mention a portion of a December 23, 2019 cardiology note characterizing Plaintiff's rheumatoid arthritis as limiting his ability to walk; a portion of a January 3, 2020 pain management note confirming the results of a December 26, 2019 left shoulder ultrasound; and his pain physician's assessment that he suffers from chronic pain (Doc. 24 at 10). Plaintiff again argues that the ALJ failed to mention or evaluate evidence after May 7, 2020, including a left shoulder MRI (*id.* at 10-11). As set forth above, the Court finds that substantial evidence supports the ALJ's determination regarding Plaintiff's ability to walk and to use his left arm and shoulder. *See also Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (the ALJ is not required to discuss every piece of evidence). Finally, Plaintiff points to a June 24, 2020 psychiatry note that Plaintiff reported spending about 95% of his time at home (Doc. 24 at 11). Plaintiff's report that he was spending 95% of his time at home, especially during the early months of the COVID pandemic, does not undermine the factors that underpin the ALJ's credibility determination.

## V. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

11

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 5th day of September, 2023.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE